UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-CIV-60377-COHN/SELTZER

WILLIE G. ARRINGTON, an individual on
behalf of himself and all others similarly
situated,

        Plaintiff,

vs.

UNITED AUTO CREDIT CORPORATION,
A California corporation

        Defendant.
_____/

## JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND CERTIFICATION OF CLASS WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff Willie G. Arrington, an individual on behalf of himself and all other similarly situated, and defendant United Auto Credit Corporation jointly move for preliminary approval of the settlement reached through mediation and certification of the class pursuant to Fed. R. Civ. P. 23(e). In support thereof, the parties would show that the proposed settlement is fair, reasonable and adequate; that the criteria for class certification have been met in this case; and that the interests of all parties are best served by the full resolution of this matter through certification. The specific grounds upon which the motion is based and the substantial matters of law to be argued are contained in the accompanying memorandum of law.

CASE NO. 09-CIV-60377-COHN/SELTZER

## MEMORANDUM OF LAW

### I

### INTRODUCTION

As the complaint reflects, Arrington has alleged that certain collection notices which United Auto sent to him and to others similarly situated violate Florida law. The specific debt owed by Arrington arose from a 2004 retail installment sale contract under which he purchased a vehicle financed by United Auto's predecessor-in-interest. In November 2008, plaintiff stopped making his monthly payments on the contract, and United Auto began collection efforts, including repossession of the vehicle and a subsequent sale of the vehicle at auction. The sale proceeds were then applied to Arrington's account, and United Auto calculated the remaining balance due as being approximately $6,300.00. United Auto then sent a deficiency notice to Arrington advising him of this. It is this notice which has given rise to the lawsuit.

This matter was settled at mediation on September 2, 2009, on terms which are detailed below. The parties now ask the Court to approve this settlement as fair, reasonable, and adequate pursuant to Rule 23(e)(2) and to certify the class so that the settlement can be implemented. Given the common factual and legal issues attendant to the form notices sent to Arrington and class members, a Rule 23 class would be the most expeditious means to resolve claims arising from this common course of conduct while at the same time providing the aggrieved class members with an efficient means of access to the courts which they may not otherwise have.[1] While United Auto

---

[1] In Deposit Guaranty Bank v. Roper, 445 U.S. 326, 339 (1980), the United States Supreme Court instructively noted that:

2

CASE NO. 09-CIV-60377-COHN/SELTZER

steadfastly denies the allegations of the complaint, it nevertheless agrees with Arrington that the terms of the proposed settlement fairly and efficiently resolve all claims asserted in the complaint.

II

**FACTUAL BACKGROUND**

A. **Procedural History**

On February 5, 2009, Arrington filed this putative class action in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida. In the complaint, he set forth four separate counts based on the deficiency notices sent by United Auto to plaintiff and to other class members residing in Florida. Count I alleged that these deficiency notices violated Florida Statutes § 679.616 (UCC § 9-616) because they failed to include an "explanation" of how the deficiency was calculated. Statutory damages of $500 were requested. Counts II and III then sought an injunction (under § 679.625 and under the common law, respectively) to prevent United Auto from providing adverse credit information about plaintiff to national consumer reporting agencies such as Equifax. And Count IV alleged that United Auto had violated the Florida Consumer Collection Practices Act ("FCCPA") by seeking to "enforce a debt when it knew that the debt was not legitimate" under

---

> Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.

Following Roper, the Court stated in Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985), that:

> Modern plaintiff class actions follow the same goals, permitting litigation of a suit involving common questions when there are too many plaintiffs for proper joinder. Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.

3

CASE NO. 09-CIV-60377-COHN/SELTZER

Florida's Anti-Deficiency Act, Florida Statutes § 516.31. Statutory damages of $1000, plus attorney's fees and costs, were requested. The complaint further asserted that the deficiency notices sent to other putative class members since June 12, 2008 likewise failed to comply with Florida law and have given rise to the same damages.

United Auto removed the case to this Court based on diversity of citizenship. It then answered the complaint, denying liability and raising several affirmative defenses including, but not limited to, substantial compliance with the various statutes cited in the complaint and set-off regarding the deficiency balances owed by Arrington and the putative class members. Discovery ensued including three rounds of production, two sets of interrogatories, and two depositions of United Auto employees. During that process, United Auto filed a motion to add a counterclaim seeking to recover the deficiency balance. While this motion was pending, mediation was held and the settlement was reached.

B. **Settlement**

   1. **Basis for the Settlement**

Based upon discovery, investigation and evaluation of the facts and law relating to the matters alleged in the pleadings, the parties and counsel agreed that it would be in the best interest of all parties to settle the action. Among those factors influencing Arrington's desire to settle were: (i) the substantial benefits to him and to the class under the terms of the settlement; (ii) the uncertainty of being able to prove all of the allegations in the complaint, as well as the uncertainty of being able to overcome the defenses thereto; (iii) the attendant risks of litigation, especially in complex actions such as this, coupled with the difficulties and delays inherent in such litigation; (iv) the desirability of consummating a settlement promptly in order to provide effective and efficient relief to him and to

4

CASE NO. 09-CIV-60377-COHN/SELTZER

the class; (v) the fact that what is being agreed upon in settlement cures the concerns which precipitated the suit in the first instance; and (vi) the remedial actions being taken by United Auto will ensure that prospective customers will likewise benefit from the settlement.

By the same token, United Auto considered it desirable for the action to be certified, finally settled and dismissed because the settlement will (i) provide substantial benefits to its customers; (ii) confer substantial benefits on it, including the avoidance of further expense and disruption of the management and operation of its businesses due to the pendency and defense of the action; (iii) avoid the substantial cost, burdens and uncertainties associated with the continued litigation of the claims; (iv) eliminate the uncertainty as to whether its counterclaim will be permitted to go forward and whether it will ultimately be able to prove its defenses; and (v) ensure that in the future its customers are fully informed as to how deficiencies are calculated. Thus, as a result of negotiations -- consummated under the supervision of a neutral mediator -- the parties entered into a stipulation of settlement.

2. **Summary of the Settlement.**

The essential terms of the settlement reached by the parties through mediation are as follows:

(a) *Certification of the Class*. The parties have agreed to the certification of a class of the 374 Florida residents who financed the purchase of a motor vehicle through a contract held by United Auto; whose vehicle was repossessed during the period from June 12, 2008 to September 2, 2009; who were sent deficiency notices in the form or substantially similar to the notice attached as Exhibit "B" to the complaint; and who have not been discharged in bankruptcy or made payment agreements with United Auto subsequent to the repossession of the vehicle.

CASE NO. 09-CIV-60377-COHN/SELTZER

(b) *Implementation of Procedures*. United Auto has not admitted to any defects in its current operations relating to deficiency notices, but has agreed to adopt and effectuate procedures reasonably designed to ensure compliance with the notice requirements specified in Florida Statutes § 679.616(2)(a), as now existing or as amended from time to time. The parties have agreed for the Court to enter a consent decree permanently enjoining United Auto from using the same or substantially the same notice of deficiency as Exhibit "B" to the complaint in connection with the enforcement of a security interest in any consumer goods.

(c) *Economic Relief*. All class members will be entitled to class relief without having to show any fault or wrongdoing on United Auto's part as follows:

> *Account Credit*. Each class member will receive an account credit of $2,500.00 on his or her account balance. In the event that a class member's balance is reduced to zero, United Auto shall not be obligated to pay or provide any monetary benefit to such class member.

> *Interest Non-accrual*. United Auto has agreed to waive the accrual of any additional interest, late charges or other fees on the respective accounts of the class members for a period of twenty-four calendar months from the final settlement date. With regard to any balances remaining after the expiration of the twenty-four month period, interest at the statutory rate shall accrue from the date thereof.

(d) *Class Representative's Compensation*. United Auto has agreed to pay the class representative $5,000 and to waive any right to collect a deficiency from him.

(e) *Attorney's Fees and Costs*. United Auto has agreed to pay Arrington's counsel $47,000 in attorney's fees and $3,000 in costs.

CASE NO. 09-CIV-60377-COHN/SELTZER

(f) *Notice to Class*. The parties have agreed that class notice shall be provided in a form and manner negotiated by the parties through a mailing sent by first-class mail to the best available address of each class member pursuant to the books and records of United Auto. All the costs of the class notice and administration will be paid by United Auto. Moreover, any class member not wishing to be a member of the class shall have the right to opt out of the settlement agreement, and class members shall have the right to object to the settlement in accordance with the Federal Rules of Civil Procedure. And finally, United Auto shall pay all costs of the settlement administration through an administrator of its choosing, subject to the approval and participation of class counsel.

(g) *Release*. The members of the settlement class shall release any individual claims against United Auto for all claims brought in this action as set forth in the complaint. The release shall not extend to or include claims for personal injuries or claims for actual damages that are not claimed in this action.

### III

### THE CLASS SHOULD BE CERTIFIED

An essential component of approving a class action settlement is a finding that the case is amenable to class certification. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620-21 (1997); In re Prudential Ins. Co., 148 F.3d 283, 308 (3d Cir. 1998). In the specific context of a settlement class, all elements which are required for class certification under Rule 23 must be satisfied except, of course, for any inquiry into anticipated management problems if the case were tried. Before turning to these specific elements, it should first be noted that classes are often certified under Rule 23 in cases similar to this which involve claims of statutorily defective collection notices. See, e.g., Jenkins v. Hyundai Motor Financing Co., 2008 WL 781862 (S.D. Ohio Mar. 24, 2008)

(certifying statewide class of defaulting purchasers who had bought vehicles under a retail installment contract and to whom Hyundai allegedly failed to provide proper post-repossession notices under UCC); Chisolm v. TranSouth Financial Corp., 194 F.R.D. 538, 557-69 (E.D. Va. 2000).[2] In fact, another division of this Court -- just a few months ago -- upheld the certification of a class in connection with claims brought under the Federal Debt Collection Practices Act -- the federal counterpart to the Florida statute upon which Arrington bases certain claims in this action. Hicks v. Client Svcs., Inc., 257 F.R.D. 699 (S.D. Fla. 2009).

As far as the specific elements to be considered in analyzing class certification in connection with a proposed settlement, those can be found in Rule 23(a) and 23(b). See Fresco v. Auto Data Direct, Inc., 2007 WL 2330895 (S.D. Fla. 2007) (granting motion for preliminary approval of settlement and certifying settlement class). Four requirements must be met under Rule 23(a): numerosity, commonality, typicality and adequacy of representation. Id. at *2; accord Katz v. MRT Holdings, LLC, 2008 WL 4725284, *1-*2 (S.D. Fla. Oct. 24, 2008). In addition, the parties must satisfy one of the subsections of Rule 23(b). Here, the operative subsection is Rule 23(b)(3), which requires two showings: predominance and superiority of the class action procedure. Katz, 2008 WL 4725284 at *2. The following explains why all of these factors are satisfied here.

---

[2] Such classes have also been certified under state rules which mirror Rule 23. See, e.g., Walczak v. Onyx Acceptance Corp., 850 N.E.2d 357, 366-72 (Ill. App. 2006); Car Now Acceptance Co. v. Block, 2002 WL 32001272, *3-*8 (Ohio. Com. Pl. 2002), aff'd, North Shore Auto Financing, Inc. v. Block, 2003 WL 21714583 (Ohio App. 2003); Middleton v. Sunstar Acceptance Corp., 2000 WL 33385388, *3-*8 (S.C. Com. Pl. 2000).

CASE NO. 09-CIV-60377-COHN/SELTZER

A. **Requirements of Rule 23(a) are Satisfied**

1. **Numerosity**

The numerosity requirement is a low threshold. As this Court observed in approving class certification in Katz:

> The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." ... *The Eleventh Circuit has held that "[g]enerally, 'less than twenty-one is inadequate, more than forty adequate.'"* Cheney v. Cyberguard Corp., 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)).

Katz, 2008 WL 4725284 at *2 (emphasis added; citations omitted); see also Noell v. Oceans Casino Cruises, Inc., 2009 WL 1953628, * 2 (Jan. 20, 2009), *approved,* 2009 WL 541329 (M.D. Fla. Mar. 4, 2009) (class of 106 members certified for settlement purposes). With 374 class members here, this class falls very comfortably into the Eleventh Circuit's "more than forty" standard.

2. **Commonality**

Commonality is likewise a low threshold, requiring merely that there be "at least one issue affecting all or a significant number of proposed class members." Fresco, 2007 WL 2330895 at *2; see also Fabricant v. Sears Roebuck, 202 F.R.D. 310, 313 (S.D. Fla. 2001). This case involves way more than just one issue in common since it involves a form notice sent to all class members. In this context, courts usually find that commonality exists.

> Plaintiff claims that Defendants sent her debt collection letters that were substantially similar to those sent to the other Class members and that those letters violated the same federal and state debt collection statutes. *These allegations are sufficient to show questions of law or fact that are common to the Class.*

Orloff v. Syndicated Office Systems, Inc., 2004 WL 870691, *3 (E.D. Pa. Apr. 22, 2004) (emphasis

9

CASE NO. 09-CIV-60377-COHN/SELTZER

added); see also Jenkins, at *5, n.6 (commonality met where Hyundai and class members entered into substantively similar contracts and Hyundai's form post-repossession notices failed to satisfy UCC). Given the record in this case, the commonality prong is more than adequately satisfied. See Katz, 2008 WL 4725284 at *3 (commonality satisfied when defendants engage in "standardized course of conduct that affects all class members").

### 3. Typicality

As this Court has explained, "typicality" requires that the class representative's claims "arise from the same event or pattern or practice and are based on the same legal theory as the claims of the class." Katz, 2008 WL 4725284 at *3, *quoting*, Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984); Fresco, 2007 WL 2330895 at *2. Otherwise put, there simply needs to be "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." Fabricant, 202 F.R.D. at 313; see also Kornberg, 741 F.2d at 1337.[3]

Here, all members of the proposed class were sent a deficiency notice in substantially the same form as the one sent to Arrington. This type of situation is uniquely suited to a finding of typicality. As the court explained in Jenkins:

> The Court concludes that Jenkins is a typical representative of the class. Her claims arise from the same practice or conduct that gives rise to the claims of other class members and are based on the same legal theory. ... Plaintiff alleges that she did not receive proper post-repossession notice as required under the UCC and similar state statutes. Hyundai's alleged failure to send proper notice is the center

---

[3]   It should be noted here that "[t]ypicality is not defeated by specific defenses or counterclaims to the named plaintiff's claim." Fabricant, 202 F.R.D. at 314. As an example, Walczak, *supra* -- which was likewise a class action arising from post-repossession notices allegedly violating the UCC -- observed a deficiency counterclaim "may be dealt with on a class-wide basis" and "does not defeat certification" of the class. Id. at 373.

10

CASE NO. 09-CIV-60377-COHN/SELTZER

> of the dispute, and is the common practice at issue in this case that forms a factual cohesiveness for the class.

Jenkins, 2008 WL 781862 at *5. To the same effect is Orloff:

> Plaintiff's claims and those of the other Class members are typical because Plaintiff and the other Class members received substantially similar letters and claim that those letters violated the same federal and state statutes. Other courts have found the typicality requirement satisfied under similar circumstances in debt collection class actions.

Orloff, 2004 WL 870691 at *4. For these reasons, typicality is satisfied here.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that the class representative and his counsel are capable of prosecuting the action and that there is no antagonism or conflict of interest between the named class representative and the other members of the class. See Fresco, 2007 WL 2330895 at *2; Fabricant, 202 F.R.D. at 314-15; see also Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987). The record more than adequately establishes these points. As for the class representative, Arrington possesses the same interests here as the other class members and has demonstrated a willingness and commitment to pursue the claims of the class through his active participation in this litigation. See Katz, 2008 WL 4725284 at *4; In re Ins. Mgmt. Solutions Group, Inc. Securities Litig., 206 F.R.D. 514, 516-17 (M.D. Fla. 2002). As for class counsel, he has extensive experience in litigating similar class actions based on claims of unfair debt collection practices and is thus fully capable of protecting the interests of the class. See Katz, 2008 WL 4725284 at *4; see also 1 *Newberg on Class Actions* 4th § 3.24 at 417-418 & n. 353 (2002) (courts typically *presume* an attorney to be competent to handle the case absent proof to the contrary).

CASE NO. 09-CIV-60377-COHN/SELTZER

For these reasons, all requirements of Rule 23(a) are met. The next inquiry relates to the two factors set forth in Rule 23(b)(3).

**B.     Requirements of Rule 23(b)(3) Are Satisfied**

   **1.     Predominance**

The issues in the proposed class action must be subject to generalized proof that *predominates* over those issues that are subject only to individualized proof. See Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997); Katz, 2008 WL 4725284 at *4. However, this does not mean that individual issues (*e.g.*, regarding calculation of damages) cannot exist or that common issues must be dispositive of the entire case. See In re Carbon Dioxide Antitrust Litig., 149 F.R.D. 229, 234 (M.D. Fla. 1993); Powers v. Stuart-James Co., 707 F. Supp. 499, 502 (M.D. Fla. 1989); see also Singer v. AT&T Corp., 185 F.R.D. 681, 690 (S.D. Fla. 1998); Fabricant, 202 F.R.D. at 316-17 ("Rule 23(b)(3) requires only that common questions predominate over individual questions, not that all questions of law or fact need to be common"). Simply put, the common issues should be the feature of the case.

As reflected by Jenkins, this very type of case easily satisfies "predominance." As the court stated:

> In this case, the questions of whether Hyundai engaged in a uniform course of conduct with respect issuing the same or substantially similar pre-disposition Notices to class member and whether these Notices violate [state] law are central to this litigation. The success of each individual claim will depend on a favorable, disposition of the common question of whether Hyundai's standardized forms were statutorily deficient under the laws of [the state]. The claims of the ... class members arise out of, and are based on this common nucleus of operative facts. These issues, in turn, predominate and are the focus of the efforts of all of the putative litigants.

12

Jenkins, 2008 WL 781862 at *8. Orloff mirrors this thought:

> Defendants sent substantially similar debt collection letters to Plaintiff and the other Class members. Accordingly, common questions of law and fact predominate because of the virtually identical factual and legal predicates of each class member's claim.

Orloff, 2004 WL 870691 at *5. Predominance is clearly satisfied here.

## 2. Superiority

This final inquiry looks primarily to whether a class action would be the superior method to fairly and efficiently adjudicate the claims. See Katz, 2008 WL 4725284 at *6; see also Leszczynski v. Allianz Ins., 176 F.R.D. 659, 675 (S.D. Fla. 1997). As the decisional law makes clear, the class action procedure is indeed superior in cases involving debt collection practices. As a division of this Court recently stated in upholding class certification in the specific context of unfair debt collection claims:

> Class actions are particularly superior for cases where individual recovery would be small, because class actions overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor. ... Macarz v. Transworld Systems, 193 F.R.D. 46, 55 (D. Conn. 2000) (... "Although class members may recover smaller damages amounts than would have been the case in individual actions, the Court find that the class action vehicle is nonetheless superior, given the remote likelihood that such individual actions actually would be brought.")

Hicks, 257 F.R.D. 699, 700-01 (S.D. Fla. 2009), *quoting in part*, Amchem, 521 U.S. at 617. This was likewise the upshot of Jenkins:

> [T]he Court concludes that a class action is the superior method for judicial resolution of their claims. ... One important factor that indicates the superiority of a Rule 23 action in the consumer-

protection field is that typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. The Court is mindful that a failure to certify a class will most likely render individual actions in this case noneconomical for Plaintiffs to pursue. Plaintiff points out that *a typical class member is unaware that Hyundai may have disposed of his or her vehicle in violation of the law, and that without this knowledge, few class members can be expected to sue individually when they are unlikely even to know that they have a valid claim.* Plaintiff also emphasizes that a typical class member, whose vehicle was repossessed for failure to make timely payments, is unlikely to be able to afford an attorney. A class action is the most efficient method of adjudicating the claims of numerous class members who, largely unsophisticated and uninformed of their rights, might not otherwise possess the initiative to commence an action on their own behalf.

Jenkins, 2008 WL 781862 at *8-*9 (emphasis added; citations omitted); see also Orloff, 2004 WL 870691 at *5 ("A class action is superior to individual lawsuits ... because individual Class members are unlikely to bring individual actions given the likelihood that their litigation expenses would exceed any potential recovery").

As for manageability of the class settlement, that would not be a problem given the relatively modest number of class members (374). Indeed, class actions involving thousands -- even tens of thousands -- of class members have been certified for settlement purposes. See, e.g., Strube v. American Equity Investment Life Ins. Co., 226 F.R.D. 688, 695 (M.D.Fla. 2005) (23,000 class members); Garcia v. United Auto Credit Corp., 2008 WL 2914007 at *3 (S.D. Fla. 2008) (3,028 class members).[4]

---

[4] The recent Garcia class action was similar to this case in that it challenged certain post-repossession notices sent by United Auto to customers who had defaulted on their auto loans. The only difference is that the notices at issue there related to the sale of the collateral, rather than to the resulting deficiency. The citation in the text is to the parties' joint motion for class settlement approval, which sets forth the terms of that settlement. On October 17, 2008, Judge Altonaga

CASE NO. 09-CIV-60377-COHN/SELTZER

IV

## THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

In In re United States Oil and Gas Litigation, 967 F.2d 489, 493 (11th Cir. 1992), the Eleventh Circuit emphasized that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." Judge Gold made the very same point in Association for Disabled Americans v. Amoco Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002): "There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." To that end, so long as there has been no fraud or collusion in resolving the case *and* the terms are fair, adequate and reasonable, the settlement should be approved. See Bennett v. Behring, 737 F.2d 982, 986 (11th Cir. 1984); Lipuma v. American Express Co., 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005); Amoco Oil, 211 F.R.D. at 466. As the Eleventh Circuit stated in Bennett:

> Determining the fairness of a settlement is left to the sound discretion of the trial court and we will not overturn the court's decision about a clear showing of abuse of that discretion. ... In addition, our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.

Id. (citations omitted); Ault v. Walt Disney World Co., 254 F.R.D. 680, 688 (M.D. Fla. 2009).

In Fresco, Judge Martinez -- tacitly borrowing from the standard set forth by the Eleventh Circuit in Bennett -- examined several factors in determining whether the proposed settlement should be preliminarily approved as fair, reasonable and adequate, including: (1) the absence of any collusion among the parties; (2) the significant risks of continued litigation; (3) the complexity,

---

entered a final judgment (not available on Westlaw) which approved the class and settlement in every respect as set forth in the joint motion.

15

expense, and duration of the litigation; (4) the substantial benefits that will be provided to class members under the proposed settlement; (5) the stage of the litigation at which the settlement was achieved; and (6) the judgment of experienced counsel for the parties. Fresco, 2007 WL 2330895 at *5-*6. Further guidance was provided by Judge Gold in Amoco Oil as to the deferential approach a court should take when examining these factors:

> In evaluating these considerations, the Court must not try the case on the merits. Rather, the Court must rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel. In evaluating a settlement's fairness, it should not be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might be gained. Above all, the court must be mindful that inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.

Amoco Oil, 211 F.R.D. at 467; see also Lipuma, 406 F. Supp. 2d at 1315.

When the factors are viewed in this proper perspective, it is clear that they overwhelmingly support that the settlement is fair, adequate and reasonable here:

> ➢ *Absence of any collusion among the parties:* As officers of the court, undersigned counsel assure the Court that there has been no collusion among the parties or counsel in reaching the settlement and that this settlement was the product of informed, arms-length negotiations. See Lipuma, 406 F. Supp. 2d at 1319. Indeed, this litigation has been contentious and hard-fought from the beginning, and the settlement was only achieved as a result of a full day of back-and-forth negotiations before neutral mediator, Hugh Chappell.

> ➢ *Significant Risks of Continued Litigation:* There is significant downside risk to the class from continuing with this litigation. Specifically, the average deficiency owed by the class

CASE NO. 09-CIV-60377-COHN/SELTZER

members far exceeds the statutory damages they are seeking here, plus the class members could be exposed to attorney's fees under the terms of the installment contracts. By the same token, there is a significant risk to United Auto as well in proceeding with this litigation. If the Court were to reject United Auto's counterclaim and plaintiff were able to prove its claims on a classwide basis, United Auto faces potential exposure to substantial damages and plaintiff's attorney's fees, not to mention its own fees which would become far more substantial as the litigation proceeds.

> ➢ *Complexity, expense, and duration of the litigation:* Consumer protection class actions are complex and expensive by nature. See Strube, 226 F.R.D. at 698. And this particular litigation could drag on for many years with extensive discovery and briefing on class certification and the merits, as well as a potential appeal by the losing party -- which alone could last for several years. At this point, the litigation is eight months old. This duration could easily quadruple if the litigation were to go forward.

> ➢ *Substantial benefits to class members:* In this case, the terms of the settlement fully address the circumstances giving rise to this suit in that United Auto has agreed to change its business practice regarding the deficiency notices going forward. Moreover, the financial benefit to the class members is real and substantial. These class members stopped making payments on legitimate contractual obligations to United Auto, and United Auto has the right to act on those defaults. United Auto's agreement to reduce each of the class member's balances by $2,500 and to waive two years of prospective interest and late charges therefore represents an *immediate* and *significant* financial benefit to class members. Should any class member not wish to participate in the settlement, the class members are given the opportunity to opt out and pursue their own remedies.

17

CASE NO. 09-CIV-60377-COHN/SELTZER

> *Stage of the litigation:* Mediation was held seven months into the litigation -- after several depositions and after several rounds of paper discovery which had crystalized the issues to be addressed as well as the number of class members and potential damages. By that point, counsel for both parties had adequate opportunity to analyze the relevant legal issues and had a "clear view of the strengths and weaknesses of their cases." See, e.g., In re Warner Communications Sec. Litigation, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). As part of that process, United Auto filed its motion to assert a counterclaim -- a motion which, for reasons noted above, carried substantial risks for both sides depending on how the Court ruled. Mediation was then held.

> *The judgment of experienced counsel for the parties:* All attorneys of record are very experienced in litigation of this nature and have recommended settlement to the court, as well as to their clients. And while no opposition has yet been expressed to the settlement as proposed simply because of the current stage of the proceedings, no objections are anticipated.

For these reasons, all relevant factors favor approval of this settlement as fair, adequate and reasonable.

## CONCLUSION

The parties respectfully request that this Court preliminarily certify the class as defined in the complaint and approve the settlement.

CASE NO. 09-CIV-60377-COHN/SELTZDER

Respectfully submitted by all parties this 23rd day of December, 2009, by:

/s/ Robert W. Murphy
Robert W. Murphy, Esquire
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telefax
Counsel for Plaintiff and Class
rphyu@aol.com

/s/ John R. Hargrove
John R. Hargrove, Esquire
Hargrove Person & Brown, P.A.
Florida Bar No. 984345
21 S.E. 5th Street, Suite 200
Boca Raton, FL 33432
(561) 300-3900 Telephone
(561) 300-3890 Telefax
Counsel for Defendant
jrh@hargrovelawgroup.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 23, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on John R. Hargrove, Esquire, Hargrove, Pierson & Brown, P.A., 21 SE 5th Street, Suite 200, Boca Raton, FL 33432, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ Robert W. Murphy
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Facsimile
rphyu@aol.com

CASE NO. 09-CIV-60377-COHN/SELTZER

## SERVICE LIST

ARRINGTON, WILLIE G. V. UNITED AUTO CREDIT CORPORATION
CASE NO. 09-CIV-60377-COHN/SELTZER
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

John R. Hargrove, Hargrove Pierson & Brown, P.A., 200 S.E 5th Street, Boca Raton, FL 33432