# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:09-60377-CIV-COHN/SELTZER

WILLIE G. ARRINGTON, an individual, on behalf
of himself and all others similarly situated,

          Plaintiff,

vs.                                           **CLASS ACTION**

UNITED AUTO CREDIT CORPORATION,
a California corporation,

          Defendant.

_____/

### MOTION FOR FINAL APPROVAL OF
### CLASS ACTION SETTLEMENT AGREEMENT

Plaintiff, Willie G. Arrington, an individual, on behalf of himself and all others similarly

situated ("Class Representative"), pursuant to Rule 23, Federal Rules of Civil Procedure, by and

through his undersigned attorney, hereby respectfully moves this Honorable Court for final

approval of the Class Action Settlement Agreement in this matter, and in support thereof would

show as follows:

1.        In the instant action, the Class Representative filed a Complaint against

Defendant, United Auto Credit Corporation, a California corporation ("United Auto"), asserting

that United Auto failed to comply with the requirements of Florida state law with respect to the

use of certain deficiency notices subsequent to repossession of automobiles.

2.        After extensive arm's length settlement negotiations, including a day-long

mediation with the mediator, E. Hugh Chappell, Esquire, on September 2, 2009, the parties

reached a Class Action Settlement Agreement ("Settlement Agreement"), a copy of which has previously been filed with the Court.

3.      On January 6, 2010, this Court entered an Order Granting Preliminary Approval of Class Settlement ("Preliminary Approval Order") [DE 29].

4.      In support of the instant application, the Class Representative filed the following declarations/affidavits:

(a)   Affidavit of Michael Caines, Chief Executive Officer, First Class, Inc. ("Settlement Administrator Report") [DE 30-2]; and

(b)   Declaration of Robert W. Murphy, Esquire ("Class Counsel Declaration") [DE 31].

5.      As detailed below, the Settlement Agreement is fair, reasonable, and provides substantial benefits to the Class and should be given final approval by this Court in all respects.

## MEMORANDUM OF LAW

### I. INTRODUCTION

#### A.  Review of Pleadings

In the instant proceeding, Mr. Arrington has filed a Complaint seeking class-wide relief against United Auto for violation of Florida law concerning the repossession of automobiles under Article IX, Part VI of the Uniform Commercial Code ("UCC "), Florida Statutes §679.616. In particular, in his Complaint, Mr. Arrington has alleged that United Auto failed to provide to Mr. Arrington and other members of the Class a statutorily mandated notice of deficiency subsequent to the repossession sale of repossessed motor vehicles.  Additionally, as a result of the failure of United Auto to comply with the requirements of Florida Statute §516.31(3), known

more commonly as the "Florida Anti-Deficiency Statute" ("Florida Anti-Deficiency Statute"),

Mr. Arrington has brought a claim for class-wide relief under Florida Statute Chapter 559, *et sequi*, known more commonly as the "Florida Consumer Collection Practices Act" ("FCCPA")[DE 1].

In response to the Complaint, United Auto has filed an Answer which denied the material allegations of the Complaint.  With respect to its affirmative defenses, United Auto claimed *inter alia* the so-called "bona fide error" defense with respect to the claims under the FCCPA. Further, United Auto claimed a set-off for any deficiencies owed by Class Members [DE 7].

### B.   Analysis of Applicable Substantive Law

#### 1.   Revised Article IX Imposes a Duty on the Part of the Secured Creditor to Provide a Detailed and Specific Explanation to the Consumer of the Calculation of a Deficiency or a Surplus

Under former Article IX, in the absence of a requirement that the creditor provide its calculations to the consumer, significant controversy existed as to a determination as to whether a consumer was entitled to a surplus or was liable for a deficiency.  As a result, many secured creditors were wrongfully withholding surpluses and inflating deficiencies without consequence.

The drafters of revised Article IX obviated the accounting problem by requiring the secured party in a consumer goods transaction to provide a written explanation of a surplus or deficiency.  Under Section 9-616, the explanation must state the amount of the surplus or the deficiency as well as any future debits, credits and charges, including credit service charges, interest, rebates and expenses.  In addition, the explanation must state, **in order**:

- the aggregate amount of obligation secured by a security interest

- the amount of the proceeds of the sale

- the amount of the obligation remaining after deducting the proceeds

- the expense of retaking, holding, preparing, processing and selling the collateral, attorney's fees secured by the collateral

- the credits, including rebates, to which the obligor is known to be entitled

- the amount of the surplus or deficiency

The notice of deficiency used by United Auto failed to disclose the mandated information under Section 9-616(c). Among other things, the notice of deficiency did not provide the proper accounting specifically contemplated under the UCC. More importantly, the notice of deficiency did not disclose the rebate of any finance charge under the finance agreements of the Class Members.

Under revised Article IX, the failure to comply with the deficiency accounting requirement, subjects the secured creditor to statutory damages of Five Hundred Dollars ($500.00) when non-compliance was a part of the "pattern or consistent with a practice of noncompliance." UCC Section 9-625(b). As United Auto has consistently used the same defective form, the pattern and practice is self-evident. Accordingly, each class member to whom a defective deficiency notice was sent would be entitled to Five Hundred Dollars ($500.00) statutory damages.

**2. *As a Result of the Failure of United Auto to Calculate Deficiency Balances Using the Fair Market Value of Repossessed Collateral, United Auto has Violated the Florida Consumer Collection Practices Act***

a. Review of Florida Anti-Deficiency Statute

The history of usury regulation is to a large degree an account of conflict between the conviction that the lending of money at high interest rates is predatory and immoral and the fact

4

that such money lending is necessary for commerce.  See, generally, *The Two-Tiered Consumer Financial Services Marketplace: The Fringe Banking System and its Challenge to Current Thinking About the Socio-Economic Role of Usury Laws in Today's Society.*  51 U.S.C. Law Review 35 (2000).  As a result of the conflict, the structure of credit statutes in most states today mandates a usury ceiling riddled with statutory exceptions for particular creditors or transactions. The statutory exceptions are known as "special" usury laws because of their limited scope to a specific area of finance, e.g., small loans, pawn brokers, etc.

With respect to the financing of automobiles, the legislatures of most states adopted retail installment sales acts in the 1940's and the 1950's.  Such statutes regulate traditional fixed-term credit sales of consumer goods.  Florida adopted the "Motor Vehicle Retail Sales Finance Act" ("FRSFA"), Florida Statutes §520.01, *et sequi,* in 1957.  Under Florida Statutes §520.08, the finance charge may exceed the usury limit under a graduating schedule based on the age of the motor vehicle.

Florida Statutes §516.31(3), known more commonly as the "Florida Anti-Deficiency Statute" ("Florida Anti-Deficiency Statute"), provides in pertinent part:

> (3) Limitations on Deficiency Claims - If a creditor takes possession of property which was collateral under a consumer credit transaction, the consumer shall not be personally liable to the creditor for any unpaid balance on the obligation unless the unpaid balance of the consumer's obligation at the time of default was $2,000 or more. When the unpaid balance is $2,000 or more, the creditor shall be entitled to recover from the consumer the deficiency, if any, resulting from deducting the fair market value of the collateral from the unpaid balance due. In the proceeding for a deficiency, the fair market value of the collateral should be a question for the trier of fact. Periodically published trade estimates of the retail value of the goods shall, to the extent they are recognized in a particular trade or business, be presumed to be the fair market value of the collateral.

Contrary to the requirements of the Florida Anti-Deficiency Statute, United Auto did not

use the fair market value of the vehicle to calculate the deficiency balance it is collecting or attempting to collect from the Class Representative, in violation of Florida Statutes §516.31 of the Florida Anti-Deficiency Statute.  According to the Complaint, United Auto claimed deficiencies against consumers without determining the deficiency based upon the fair market value of the collateral, i.e. the repossessed vehicle, in a manner which is contrary to the Florida Anti-Deficiency Statute.  Rather, United Auto calculated deficiencies based on the amount of the alleged debt owed by the consumer, together with any authorized charges and expenses, less the proceeds from the sale of the repossessed vehicle.

> b.  <u>Application of the Florida Consumer Collection Practices Act</u>

As a result of the attempt by United Auto collect deficiencies in a manner contrary to the Florida Anti-Deficiency Statute, the Class Representative sought relief against United Auto under the Florida Consumer Collection Practices Act ("FCCPA").  Specifically, United Auto violated the FCCPA in that it claimed, attempted or threatened to enforce a debt when it knew the debt was not legitimate  or asserted the existence of some other legal right when it knew that the right did not exist in contravention of Florida Statutes §559.72(9).

Pursuant to Florida Statute §559.77(2), in any class action lawsuit brought under the FCCPA, the Court may award additional statutory damages up to One Thousand ($1,000.00) Dollars for each named plaintiff and an aggregate award of additional statutory damages not to exceed the lesser of  $500,000 or 1% of the defendant's net worth for all remaining class members.   However, in no event may the aggregate award in a class action provide an individual class member with additional statutory damages in excess of One Thousand ($1,000.00) Dollars.

### C.   Procedural History of Litigation

#### 1.   Description of Discovery Efforts of Class Counsel

Contemporaneous with the service of the initial complaint in the state court proceeding, Class Counsel served discovery on United Auto consisting of *inter alia* :

- Plaintiff's First Request for Production of Documents from Defendant United Auto Credit Corporation; and

- Plaintiff's First Set of Interrogatories to Defendant United Auto Credit Corporation.

Subsequently after removal, Class Counsel propounded additional written discovery:

- Plaintiff's Second Request for Production of Documents from Defendant United Auto Credit Corporation, bearing certificate of service date May 27, 2009;

- Plaintiff's Third Request for Production of Documents from Defendant United Auto Credit Corporation, bearing certificate of service date May 27, 2009; and

- Plaintiff's Second Set of Interrogatories to Defendant United Auto Credit Corporation, bearing certificate of service date May 27, 2009.

The discovery propounded by the Class Representative was directed to both certification and merits. With respect to certification, the Class Representative sought information germane to satisfying the requirements of Rule 23, Fed. R. Civ. P. — namely, numerosity, typicality and commonality [Murphy Declaration ¶6].

In addition to written discovery, the Class Representative noticed the deposition of the corporate designee of United Auto for Thursday, June 18, 2009. Pursuant to the Notice of Taking Deposition, Mr. Arrington sought the designation of an appropriate corporate representative of

7

United Auto to testify concerning *inter alia* matters pertaining to certification as well as the defenses raised by United Auto in its Answer and Affirmative Defenses [Murphy Declaration ¶7]. At the request of United Auto, the deposition of the corporate designee of United Auto took place in Pensacola, Florida on Thursday, June 18, 2009. United Auto produced two witnesses to respond to the designation request of Mr. Arrington.

Through formal and informal discovery provided by United Auto, Class Counsel became knowledgeable concerning the strengths and weaknesses of the respective parties' positions. According to United Auto, plenary statutory damages under the UCC and FCCPA would not eliminate most of the deficiencies claimed by United Auto. Accordingly, Class Counsel approached mediation with the desire to obtain the best possible result for the Class Members in light of the discovery disclosures made by United Auto [Murphy Declaration ¶8].

### 2. *Settlement Process*

Initial settlement discussions occurred immediately after the conclusion of the deposition of United Auto on June 18, 2009.  Subsequently, on September 2, 2009, the parties attended a day long mediation with a skilled mediator, E. Hugh Chappell, Esquire. As a result of the mediation, the parties entered into a Class Action Term Sheet ("Term Sheet"), which served as a framework for drafting the settlement documents, including the Class Action Settlement, preliminary / final approval applications, proposed orders and class notices [Murphy Declaration ¶11].

After reaching a settlement in principal, the parties negotiated the detailed final terms of the proposed settlement agreement now before the Court. The drafting of the settlement documents which were submitted to the Court for approval occurred over a period of several

weeks, during which time multiple revisions were made by respective counsel [Murphy Declaration ¶12]. As a result of these settlement efforts, the parties filed a Joint Motion for Approval of Class Settlement [DE 28], which the Court granted preliminarily on January 6, 2010 [DE 29].

### C. *Terms of Settlement*

Pursuant to the Settlement Agreement, the parties stipulated for settlement purposes only as follows:

1.      <u>Settlement Class</u>.   The settlement class consisted of Three Hundred Seventy Four (374) persons [Settlement Agreement  - ¶ IIA11].

2.      <u>Class Definition</u>.   All persons who (a) financed through United Auto the purchase of a motor vehicle, which was a "consumer good;" (b) which was repossessed during the period from June 12, 2008 to September 2, 2009; (c) who were sent post-repossession notices in the form or substantially the same form as Exhibit "B" attached to the Complaint herein, and (d) who have not been discharged in bankruptcy or made a payment agreement with United Auto subsequent to the repossession of the motor vehicle [Settlement Agreement  - ¶ IIA11].

3.      <u>Benefits to Class Members</u>.   Through the Settlement Agreement, the Class Members will receive the following benefits:

a.      *<u>Consent Decree by United Auto</u>* - At the time of final approval, the parties shall request the Court enter a decree permanently enjoining United Auto from using in the future the same or substantially same Notice of Deficiency as provided to Mr. Arrington in connection with the enforcement of a security interest in any consumer goods [Settlement Agreement  - ¶ IIIA1].

b.      *<u>Account Credit</u>* - United Auto shall credit the sum of Two Thousand Five Hundred

Dollars ($2,500) to the account balance of each class member as and for statutory damages under the UCC and the FCCPA. For purposes of the settlement, the term "account balance" shall mean the charged-off amount of the purported debt of the class member as set forth under column "CO_ _Amt" in the Class List. In the event a class member's account is reduced to "zero," United Auto shall not be required to make any monetary payment to said class member [Settlement Agreement  - ¶ IIIA2].

     *c.  Interest Non-Accrual* - United Auto agrees to waive the accrual of any additional interest, late charges or other fees on the respective accounts of the class members for a period of twenty-four months from the date of final approval of the settlement by the Court. After the expiration of said twenty-four month time period, interest at the applicable statutory rate shall accrue from the date starting twenty-four months from the date of final approval of the settlement by the Court [Settlement Agreement  - ¶ IIA2b].

### D.   Details of Settlement Administration

     Pursuant to the Order Granting Preliminary Approval of Class Settlement ("Preliminary Approval Order") entered herein on January 6, 2010 [DE 29], this Court approved on a preliminary basis the Class Settlement and further directed the Settlement Administrator to mail notice by first class mail to the Class Members at their last known address. The Class Representative has filed the Affidavit of Michael Caines of First Class, Inc. ("Settlement Administrator Report")[DE 30-2].

     According to the Settlement Administrator Report, the Settlement Administrator followed its standard practice of processing the list through the Coding Accuracy and Support System ("CASS") and the National Change of Address ("NCOA") update process of the U.S. Postal

Service using software certified by the United States Postal Service [Settlement Administrator Report - ¶ 4]. CASS allowed the Settlement Administrator to verify the address is correctly formatted for delivery and corrected zip code errors. [Settlement Administrator Report - ¶4]. The NCOA Move Update service provided current address information, if available, and any information regarding deliverability. [Settlement Administrator Report - ¶4].

On March 2, 2010, notice was mailed to 374 Class Members by first class mail, postage prepaid, forwarding service requested. [Settlement Administrator Report - ¶5]. A total of 61 notices were returned as undeliverable with no forwarding address or further information provided by the United States Postal Service [Settlement Administrator Report - ¶7].

As of May 6, 2010, pursuant to the Settlement Administrator Report, the Settlement Administrator stated the following concerning its administration:

- Objections - no objections were received [Settlement Administrator Report - ¶8]

- Exclusions - the Settlement Administrator received no requests for exclusion  [Settlement Administrator Report - ¶9].

## II.  <u>STANDARD OF REVIEW OF CLASS ACTION SETTLEMENTS</u>

Courts consistently favor settlement of disputed claims. *See Williams v. First National Bank*, 216 U.S. 582 (1910); *Weinberg v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *DuPuy v. Director, Officer of Worker's Compensation Programs*, 519 F.2d 536,541 (7th Cir.1975), *cert. denied*, 424 U.S.965 (1976). Nowhere is this policy more appropriate than in class actions:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Settlement of the complex disputes

> often involved in class actions minimizes the litigation expense of
> both parties and also reduces the strain such litigation imposes
> upon already scarce judicial resources. *Id.*

See *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir.1980); *see also,*

*Franks v. Kroger,* 649 F.2d 1216, 1224 (6th Cir.1981) *vacated on other grounds and modified*,

670 F.2d 71 (6th Cir.1982) (law generally favors and encourages the settlement of class actions);

*In re Domestic Air Transportation Antitrust Litigation,* 148 F.R.D.297, 312 (N.D.Ga.1993)

("settlements of class actions are highly favored in the law and will be upheld whenever possible

because they are a means of amicably resolving doubts and preventing lawsuits").

### III.  LEGAL ARGUMENT

**A.  Notice to the Settlement Class Has Satisfied the Requirements of Rule 23(c)(2)(B),
Fed.R.Civ.P. and Constitutional Due Process Requirements.**

*1.  The Form and Content of the Class Notice Satisfied the Requirements of Rule 23(c)(2)(B)*

Pursuant to Federal Rule of Civil Procedure 23(b)(3), the best notice practicable under the

circumstances must be sent to apprise class members of the pendency of the suit and advising

them of their right to opt-out under Rule 23(c). The rule further requires that the notice for a

(b)(3) class concisely and clearly state in plain, easily understood language *inter alia* the nature

of the action, the definition of the class certified, the right to exclude and object, and the binding

effect of the class judgment. Fed.R.Civ.P. 23(c)(2)(B).

In the instant case, the Court approved that the Settlement Agreement, which contained as

an exhibit a specimen copy of the proposed Notice to Class ("Arrington Class Notice")[DE 27-

1].  The Arrington Class Notice provided sufficient information for the Class Members to make

informed choices.  *In Re: Fed. Skywalk Cases*, 97 F.R.D. (W.D. Mo. 1982).  Under Rule

23(c)(2)(B), the notice must provide "information that a reasonable person would consider to be material and make an informed, intelligent decision whether to opt out or remain a member of the class and be bound by the final judgment." *In Re: Nissan Motor Corporation Antitrust Litigation*, 552 F.2d 1088, 1105 (5th Cir. 1977); citing with approval in *Twigg v. Sears Roebuck*, 153 F.3d 1222 (11th Cir. 1998). The Arrington Class Notice has satisfied the requirements of Rule 23 with respect to form and content.

   *2. The Best Notice Practicable Has Been Sent to the Members of the Class.*

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." When a potential class member's address is known or is readily available with reasonable effort, individual notice by mail is required. *Eisen v. Carlyle & Jacquelyn*, 417 U.S. 156, 173 (1974).

Rule 23 does not require the parties to exhaust every conceivable method of identifying and providing notice to the individual class members. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir.1985). As detailed in the Settlement Administrator Report, the Settlement Administrator followed its standard practice of processing the Class List through CASS and NCOA Services to obtain the best possible addresses for the Class Members prior to mail out [Settlement Administrator Report - ¶4]. After the initial mailing, the United States Postal Service returned a small number of Class Notices with new addresses to the Settlement Administrator, which promptly re-mailed same to new addresses [Settlement Administrator Report - ¶4].

Accordingly, in light of the limited settlement relief to the Class, "the best notice practicable" has been made by United Auto. This position is especially compelling as a number of the deficiency notices which are the subject matter of this litigation may not have been

received by the Members of the Class in the first place. *In Re: Prudential Insurance Co. of America Sales Practices Litigation*, 177 F.R.D. 216, 239 (D. N.J. 1997)["that some class members may not have received notice evidences only that the extensive notice system was not perfect.  Due process when viewed through the lens of objectivity does not require perfection"]; *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)[in antitrust class action, notice adequate where one third of class not reached by mail].

### B.   The Proposed Settlement is Fair, Adequate and Reasonable

> *1.  Federal Law Supports Approval of Class Action Settlement Agreements That Are Fair, Adequate and Reasonable.*

Judicial approval of class action settlements requires a two-step process.  In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible judicial approval." *H. Newberg, Newberg on Class Actions* (3d Ed. 1993) §11.25, p.11-37.  Once the settlement is found to be within the range of possible approval, a final approval hearing is scheduled and notice is provided to the class. *Id*.  The second step involves final determination, following a hearing at which pertinent evidence and any objections by class members may be considered, that the settlement is fair, reasonable and adequate from the standpoint of the class. *Id*. at §11.41.

*In Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the District Court described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law.  Miller v. Republic National Life Insurance Company, 559 F.2d 426 (5th Cir. 1977).  The Court is required to make a two-part determination that: 1) there is no fraud or collusion in reaching settlement, and 2) the settlement is fair,

adequate and reasonable.  Bennett v. Behring Corp., 737 F.2d 982
(11th Cir. 1984).

*Id*. at 1054

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court.  *Bennett*, 737 F. 2d at 987.  In making this determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

In determining whether a proposed settlement is fair, adequate and reasonable, this Court should consider the following seven factors:

(1)    the likelihood of success or recovery;

(2)    the range of possible recovery;

(3)    the settlement terms and conditions, and how the terms compare with the possible range of discovery;

(4)    the complexity, expense and duration of future litigation;

(5)    the substance and amount of any opposition to the settlement;

(6)    the stage of the proceedings at which settlement is reached;

(7)    the recommendations and judgment of experienced counsel and the absence of collusion.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993). Application of these factors shows that the proposed settlement is fair, adequate, reasonable and in the best interest of the Settlement Class.

2.    *Even With a Strong Factual and Legal Case, Class Members Face a Significant Risk in Establishing Liability and Damages.*

15

Although the Class Representative believes that the claims he has raised are meritorious, the Class Representative recognizes that ultimate success on the merits is by no means assured. During the initial part of this litigation, United Auto had made clear that if this matter were contested, it would vigorously challenge the merits of the claims of the Class Representative. United Auto has also contended and continues to contend that it has meritorious defenses to the asserted claims (Settlement Agreement - ¶¶ I-H).

> 3.  *The Settlement Terms and Conditions Offer Substantial Benefit to All Settlement Members Without the Necessity of a Claim Form*

Benefit to the Settlement Class is the fundamental test of the reasonableness of a settlement. Here, the proposed settlement provides remedies directly responsive to the primary relief sought by the Class Representative. With respect to the claim under the UCC, the maximum statutory damages for the class members is Five Hundred Dollars ($500.00) under Florida Statute §679.625(5)(e). Under the FCCPA, the maximum statutory damages for each class member was One Thousand Dollars ($1,000), pursuant to Florida Statute §559.77(2).

In the instant action, United Auto applied a credit of Two Thousand Five Hundred Dollars ($2,500.00) to the account balance of each class member as and for statutory damages under the UCC and FCCPA [Settlement Agreement - ¶III A2a].  Thus, the total economic benefit to the class members was Nine Hundred Thirty Five Thousand Dollars ($935,000.00).

In addition to providing an account credit, United Auto further agreed to waive the accrual of any additional interest, late charges or other fees on the respective accounts of the class members for a period of twenty-four (24) months from the date of final approval of the settlement by the Court ("Interest Freeze Period"). After the expiration of the Interest Freeze

Period, United Auto agreed that the interest on the outstanding accounts of the class members would be at the statutory rate — as opposed to the sub-prime interest rate associated with the finance agreements[1] — starting twenty four months from the date of final approval of the settlement by the Court [Settlement Agreement - ¶A2b].

The total economic benefits to the members of the Class are well in excess of one million dollars when the interest adjustment features of the settlement are considered. The benefits to the Class are —in a word— outstanding. This position is especially compelling as members of the Class will receive benefits without the necessity of filing a claim form.

4.      *The Time and Expense of Protracted Litigation Makes Settlement Appropriate.*

Settlement promotes the interests of the litigants by saving them the expense of trial of disputed issues and reduces the strain on already overburdened courts. *See, Armstrong, supra,* 616 F.2d at 313; *Newman v. Stein,* 464 F. 2d 689, 691-92 (2d Cir.)*, cert. denied, sub nom.; Benson v. Newman,* 409 U.S. 1039 (1972*); Enterprise Energy, supra,* 137 F.R.D. at 247-48 (class action settlement serves interests of both litigants and public by avoiding a time-consuming trial and appeal).  This position is especially compelling in light of the modest class size.

5.      *There is No Opposition to the Proposed Settlement.*

As noted above, the Settlement Class received notice of the proposed settlement by first

---

[1]As a sobering example of the typical interest rate of the Class, Mr. Arrington had a 24% APR.

class mail. In response to this notice program, no objections nor requests for exclusion have been raised. Based upon this unanimously favorable response to the proposed settlement, there exists no reason to delay final approval.

      *6.  Class Counsel Has Conducted Due Diligence Discovery and Has Negotiated the Settlement From a Well-Informed Perspective.*

In the several months since this class action was initiated, the parties have developed substantial appreciation for the merits of their respective positions before reaching an agreement as to settlement. The parties have conducted formal and informal discovery, including the exchange of documentation relating to numerosity and the net worth of United Auto.

Mr. Arrington was preparing to file a motion for class certification when the parties agreed to a moratorium on litigation to explore the possibility of settlement. The parties entered into settlement negotiations starting in August, 2009. In conjunction with the negotiations, the parties exchanged information regarding class size, scope and damages and exchanged documents relevant to the settlement discussions. Through this process, Class Counsel acquired sufficient knowledge and information to assess the merits of the claims and of potential settlement [Murphy Declaration - ¶¶ 9-11].

The settlement discussions were successfully concluded with a written term sheet drawn up by counsel. Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the agreement over the next several weeks [Murphy Declaration - ¶ 12].

      *7.  Class Counsel Believes That the Settlement is Fair, Reasonable and in the Best Interests of Settlement Class Members.*

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312; *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993). In the instant action, Class Counsel has significant experience in litigating consumer class actions. *See,* e.g., *Martinez v. FMS Inc.*, 2008 WL 4010101 (M.D. Fla. 2008); *Brown v. SCI Funeral Services of Florida, Inc.*, 212 F.R.D. 602 (S.D.Fla.2003); *Baez v. Wagner & Hunt, P.A.*, 442 F.Supp. 2d 1273 (S.D. Fla. 2006); *Jansen v. West Palm Nissan, Inc.*, 2006 WL 1582068 (S.D. Fla. 2006); *Tyrell v. Robert Kaye & Associates, P.A.*, 223 F.R.D. 686 (S.D. Fla. 2004); *Westlake Financial Services v. Ray*, 923 So.2d 555 (Fla. 4th DCA 2006).

"While the opinion and recommendation of experience counsel is not blindly followed by the trial court, such opinion should be given great weight in evaluating the proposed settlement." *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975). "Where experienced counsel have engaged in arm's length negotiations to reach a settlement, the trial court is entitled to rely on their judgment." *Spencer, supra,* ¶93,124 at 95,530; *see also Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)(court should defer to judgment of experienced counsel who has competently evaluated the strength of his proofs).

Here, the settlement is the product of extensive, adversarial, arm's length negotiations conduct by counsel experienced in all aspects of class action litigation, and particularly experienced in the UCC context. As discussed above, the proposed settlement offers the Settlement Class a substantial portion of the relief sought and which could be obtained at trial. Thus, in counsel's view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class [Murphy Declaration - ¶15].

19

        *8.   The Parties Negotiated the Proposed Settlement in Good Faith.*

       The proposed settlement was negotiated with the assistance of a mediator at arm's length, after several weeks of negotiation. After completion of the Term Sheet, additional detailed settlement negotiations were conducted before the final terms of the Settlement Agreement were reached.  In order to avoid any appearance of conflict, Class Counsel did not resolve attorney's fees until after resolution of the class claim.

       The negotiation process was conducted in accordance with the "Standards and Guidelines for Litigating and Settling Class Actions" ("NACA Class Settlement Guidelines") promulgated by the National Association of Consumer Advocates ("NACA"). The NACA Class Settlement Guidelines were first published at 176 F.R.D. 375 (1997) and available in revised form at http://www.naca.net/assets/ media/revisedguidelines.pdf [Murphy Declaration - Exhibit "A"]. Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy. *See, Cleveland Browns, supra,* 758 N.E.2d at 310 [Murphy Declaration - ¶13].

## IV.  <u>CONCLUSION</u>

       For all the foregoing reasons, the Class Representative respectfully requests that this Court approve the settlement as fair, adequate and reasonable.

LAW OFFICE OF ROBERT W. MURPHY

/s/ Robert W. Murphy
Robert W. Murphy
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telefax
rphyu@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 1, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on John R. Hargrove, Esquire, Hargrove, Pierson & Brown, P.A., 21 SE 5th Street, Suite 200, Boca Raton, FL 33432, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/  Robert W. Murphy

21